IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANDRE HURSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00094-P |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States of America's Motion for Summary Judgment (ECF No. 18). Having considered the motion, briefing, and applicable law, the Court finds that the United States' Motion for Summary Judgment should be and is hereby **GRANTED.** Accordingly, Plaintiff Andre Hurston's claims against the United States are hereby **DISMISSED with prejudice.**

### BACKGROUND

Hurston is a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"). Pl.'s Complaint, ECF No. 1 at ¶ 4. Hurston alleges that in June 2018, while he was in federal custody at Federal Medical Center, Fort Worth ("FMC Fort Worth"), he noticed a small hole in his leg. *Id.* at ¶ 9. He applied Neosporin and the wound scabbed over, but a week later when the scab fell off, there was a hole in Hurston's leg. *Id.* Hurston asserts that he was told by staff that he could receive wound-care treatment. *Id.* Hurston's medical

records indicate that on June 16, 2018, he was evaluated by the FMC Fort Worth medical staff, who cleaned his wound and applied a bandage. Def.'s MSJ App'x at 3.

On June 17, 2018, the nurse providing Hurston's wound care dressed the wound and told Hurston to go to sick call the next day. Pl.'s Complaint at ¶ 10. The next day, Hurston attended sick call and described the wound to the evaluating nurse. *Id.* at ¶ 11. Hurston alleges that when he attempted to remove his dressing, the nurse stopped him because the nurse said the dressing material was too expensive. *Id.* The nurse then allegedly told Hurston that he would put Hurston on wound care clinic, but Hurston alleges that he never did. *Id.*

On June 22, 2018, Hurston went to sick call again and filled out the same form before he was seen by the same evaluating nurse. *Id.* at ¶ 12. Hurston alleges that the evaluating nurse said he had forgot to put Hurston on the wound care clinic, but that Hurston would be on the call out for wound care clinic the next day. *Id.* But Hurston was again not placed on the call out. *Id.* This time, however, Hurston's dressing was changed. *Id.*

On June 25, 2018, Hurston went to sick call again, filled out the same form, and was seen by the same evaluating nurse. *Id.* at ¶ 13. This time, Hurston waited until the nurse placed Hurston on wound care call out. *Id.* The nurse took a culture of the drainage from the wound and prescribed Sulfamethoxazole / Trimeth for ten days. *Id.* Plaintiff alleges that the hole in his leg grew from the size of a pencil eraser to the size of a half dollar. *Id.* at ¶ 14.

Hurston's medical records indicate that on June 27, 2018, a nurse practitioner evaluated him for the wound (as well as a swollen thumb) and provided Hurston with education so that he could take care of his ankle wound. Def.'s MSJ App'x at 5–6. The next day, Hurston was evaluated by the same nurse practitioner. *Id.* at 7–9. Hurston reported that the wound had become more irritated, so he was prescribed antibiotics and wound care clinic for seven days. *Id.* Hurston's medical records indicate that on June 30, 2018, he failed to show up to this scheduled wound care appointment. *Id.* at 13.

From July 1, 2018, through July 11, 2018, Hurston was seen every day by a nurse for wound care. *Id.* at 12–13. On July 5, 2018, the medical records note that Hurston's wound was cleaned and FMC Fort Worth staff applied "medihoney and maxorb Ag" and covered the wound with dressing. *Id.* at 14. Hurston's medical records show that on July 8, 2018, he was evaluated by a nurse for wound care and that his wound was cleansed with "CarraKlenz." *Id.* at 17.

When Hurston was examined by a doctor on July 9, 2018, the doctor told Hurston that the wound looked like a stasis ulcer. Pl.'s Complaint at ¶ 15. When Hurston asked the doctor the results of the culture, Hurston claims that the doctor told him the culture was discarded because it had been turned in too late. *Id.* On July 11, 2018, Hurston was seen by a wound-care specialist and his wound was cultured. Def.'s MSJ App'x at 22–23. The wound was cleaned and wrapped and Hurston was educated about pressure relief measures and wound debridement. *Id.* at 23. The wound-care specialist found that Hurston's symptoms were consistent with chronic venous insufficiency. *Id.* at 22. On July 13, 2018,

3

Hurston was seen for wound care and the wound was cleaned and dressed. *Id.* at 12. On July 16, 2018, Hurston was seen for wound care, and he reported no complaints. *Id.* at 11.

Hurston began seeing a physician, and the physician decided to take a culture, picture, and measurement of Hurston's wound. Pl.'s Complaint at ¶ 16. Hurston states that on July 19, 2018, the physician informed him that he had a staph infection. *Id.* On July 20, 2018, Hurston was evaluated by both the physical therapist and doctor, and he was prescribed Doxycycline. *Id.* at ¶ 17. Hurston's medical records reveal that from July 22, 2018, through July 27, 2018, Hurston was evaluated by FMC Fort Worth medical staff and that his wound was repeatedly cleaned and dressed. Def.'s MSJ App'x at 11, 25. And from July 28, 2018, through August 11, 2018, Hurston was seen every day by a wound-care nurse, and that as of August 11, 2018, there were no signs or symptoms of an infection. *Id.* at 10. When Hurston was evaluated for an unrelated medical issue on December 21, 2018, the physician noted that Hurston had an open wound growing Staphylococcus on his leg and that Hurston "had been adequately treated and the ulceration healed." *Id.* at 31.

After filing an administrative tort claim with the BOP (Def.'s MSJ App'x at 32–37), Hurston filed a complaint in this Court on February 1, 2019, asserting claims against the BOP under the Federal Tort Claims Act ("FTCA") for negligent medical care. *See* ECF No. 1. On October 25, 2019, the United States filed the instant Motion for Summary Judgment. *See* ECF No. 18. On December 3, 2019, the Court issued an order, noting that Hurston's deadline to respond to the Motion for Summary Judgment was November 14, 2019, but that the Court would extend Hurston's time to file a response to December 30, 2019. *See* ECF No. 23. The Court further stated that if Hurston failed to file a response

4

by the newly extended deadline, the Court would accept the facts in the United States' motion as uncontroverted. *See id.* As of the date of this order, Hurston has still not filed a response to the Motion for Summary Judgment. Accordingly, the motion is ripe for the Court's review, and the Court accepts the United States' statements of fact as uncontroverted.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); FED. R. CIV. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed

allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id*. at 250.

## ANALYSIS

The United States moved for summary judgment on the ground that Hurston cannot produce evidence in support of any element of his medical malpractice claim. Br. Supp. MSJ at 15, ECF No. 19. According to the United States' argument, because Texas law requires expert testimony to establish the essential elements of a medical malpractice claim, and because Hurston has failed to designate an expert to provide such testimony, Hurston's case must be dismissed via summary judgment. *Id.* at 19. The Court agrees.

The Federal Tort Claims Act ("FTCA") authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674. State law controls liability for medical malpractice under the FTCA. *Ayers v. United States*, 750 F.2d 449, 452 n. 1 (5th Cir. 1985). Under Texas law, in a medical malpractice action, the plaintiff bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence. *Id.* "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to meet the plaintiff's

burden of proof. *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1977); *see also Quijano*, 325 F.3d at 567.

The Court's Scheduling Order established the week of February 24, 2020, as the trial date in this case, and 120 days before trial, or October 28, 2019, as the deadline to designate experts. *See* ECF No. 16 at ¶¶ 6, 15. As of the date of this order, Hurston has neither designated an expert nor acknowledged his failure to do so by requesting leave to designate an expert or providing an explanation to the Court.

Care for leg wounds and staph infections are not matters of common knowledge or within the general experience of a layman. Thus, Hurston was required to present expert testimony to establish the applicable standard of care and to show how the care he received breached that standard and caused him injury. *See Hannah v. United States*, 523 F.3d 597, 601–02 (5th Cir. 2008) (affirming summary judgment on *pro se* plaintiff's FTCA claim for allegedly negligent medical treatment he received in federal custody while suffering from a MRSA infection and rejecting the plaintiff's argument that no expert testimony was needed because a layperson could discern the standard of care for treatment of MRSA); *see also Taylor v. Fossett*, 320 S.W.3d 570, 577 (Tex. App.—Dallas 2010, no pet.) (reversing and dismissing medical malpractice case because the plaintiff's expert's report presented no factual basis for a conclusion that the doctor's failure to examine or culture the plaintiff's wound, properly diagnose MRSA, and begin treatment with appropriate antibiotics, caused the plaintiff's injuries); *Castillo v. August*, 248 S.W.3d 874, 882 (Tex. App.—El Paso 2008, no pet.) (affirming dismissal of medical malpractice claim for physician's failure to treat skin infection because the plaintiff's expert's report failed to

adequately link the doctor's actions to the plaintiff's "subsequent 'raging infection' and staph meningitis"); *cf. Jackson v. Kindred Hosps. Ltd. P'ship*, 565 S.W.3d 75, 83 (Tex. App.—Fort Worth 2018, pet. denied) (reversing dismissal of medical malpractice claim after analyzing the plaintiff's expert's report and concluding that it satisfied elements of a medical negligence claim based on medical facility's failure to treat and report the patient's skin infection that caused him to develop ulcers, abscesses, sepsis, septic shock, metabolic encephalopathy, and eventually death). Without the support of expert testimony, Hurston's medical malpractice claims fail as a matter of law. *Hood*, 554 S.W.2d at 165–66. Accordingly, summary judgment is **GRANTED** in favor of the United States and Hurston's claims are **DISMISSED with prejudice.**

## CONCLUSION

The Court finds that summary judgment should be and hereby is **GRANTED** in favor of the United States and Hurston's claims are **DISMISSED with prejudice.**

**SO ORDERED** on this **31st day** of **December, 2019**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE